**Pedro Vilarde REYES, Petitioner,**

**v.**

**John ASHCROFT, Attorney General, Respondent.**

**No. 02-71640.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 2003.

Filed Nov. 12, 2003.

Amended Feb. 12, 2004.

Bert M. Vega, Vallejo, CA, for the petitioner.

Leslie Cayer Ohta and Arthur L. Rabin, Department of Justice, Washington, DC, for the respondent.

Before WALLACE, HALL, and O'SCANNLAIN, Circuit Judges.

ORDER AND AMENDED OPINION

**ORDER**

The Opinion filed on November 12, 2003, and published at 348 F.3d 1126 (9th Cir. 2003) is amended as follows:

At page 1128, section I, amend the entire third paragraph to read as follows:

On February 3, 2000, the IJ rescheduled Reyes's hearing for March 2, 2001, and properly notified Salazar of the changed date. When Reyes failed to appear for the rescheduled hearing, Salazar moved to withdraw as his counsel of record. The IJ granted Salazar's motion and issued a removal order.

At page 1131 through page 1132, amend the entire section C to read as follows:

C.

Reyes's petition for review fails for an alternative reason: he has not shown that he provided the required notification to Salazar of the ineffective assistance allegations. Although Reyes's undated complaint letter to the California State Bar concludes with the statement "cc: Armando G. Salazar," this notation indicates at best that Reyes *intended* to send Salazar notice of the state disciplinary proceedings; it is not proof that Reyes actually did. Nor does the undated letter demonstrate that Salazar received an adequate "opportunity to respond" before Reyes filed his motion to reopen. In theory, Reyes could have mailed the complaint letter and filed the motion to reopen simultaneously, thereby affording Salazar no opportunity to furnish a timely response and thus sidestepping *Lozada's* requirement to submit "any subsequent response from counsel" with the motion to reopen. *Lozada,* 19 I. & N. Dec. 637, at 639.

Reyes's failure to meet his burden with respect to these issues is significant. In *Lozada,* the Board explained that the notice requirement provides a mechanism by which the IJ may more accurately assess the merits of a petitioner's ineffective assistance claim. "[T]he potential for abuse is apparent," the Board cautioned, "where no mechanism exists for allowing former counsel, whose integrity or competence is being impugned, to present his version of events if he so chooses, thereby discouraging baseless allegations." *Id.*

Here, Reyes may have put Salazar on notice concerning the substance of his ineffective assistance allegations (i.e., if he actually sent Salazar a copy of the complaint letter), but he offers absolutely no evidence that Salazar enjoyed a timely opportunity to respond. Because Reyes cannot prove he gave Salazar notice of the ineffective assistance allegations or an adequate opportunity to respond, we conclude that Reyes has not substantially satisfied *Lozada. Id.*

PETITION DENIED

## OPINION

WALLACE, Senior Circuit Judge:

Pedro Vilarde Reyes petitions for review of a Board of Immigration Appeals (Board) order denying his motion to reopen deportation proceedings. Reyes argues that the Board abused its discretion because his motion to reopen substantially complied with the Board's threshold procedural requirements outlined in *Matter of Lozada,* 19 I. & N. Dec. 637, 1988 WL 235454 (BIA 1988). We have jurisdiction to review the Board's decision pursuant to 8 U.S.C. § 1252(b). *Monjaraz–Munoz v. INS,* 327 F.3d 892, 894 (9th Cir.2003). We conclude that the Board did not abuse its discretion, and we deny Reyes's petition for review.

I.

Reyes, a native and citizen of the Philippines, entered the United States on a nonimmigrant visa on February 5, 1990. He remained in the United States after his visa's May 30, 1990, deadline, and a notice to appear issued more than eight years

later on September 24, 1998. The notice charged Reyes with being subject to removal pursuant to section 237(a)(1)(B) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1227(a)(1)(B), because he remained in the United States beyond his visa's expiration. Reyes responded by filing an asylum application, alleging that he would more likely than not suffer "threats, attempts against[his] life, and possible torture and death" at the hands of a government-backed paramilitary group if returned to the Philippines.

On February 8, 1999, Reyes appeared at his deportation hearing accompanied by his attorney of record, Armando G. Salazar, and Salazar's associate, Nadeem H. Makada. The Immigration Judge (IJ) immediately rescheduled the hearing for March 29, 1999, and Reyes returned on the appointed date with Makada. At the second hearing, Reyes admitted the allegations contained in the notice to appear and conceded deportability. The IJ designated the Philippines as Reyes's potential destination for deportation and scheduled a hearing for March 9, 2000, to consider Reyes's asylum application.

On February 3, 2000, the IJ rescheduled Reyes's hearing for March 2, 2001, and properly notified Salazar of the changed date. When Reyes failed to appear for the rescheduled hearing, Salazar moved to withdraw as his counsel of record. The IJ granted Salazar's motion and issued a removal order.

Reyes thereafter obtained new counsel and moved to reopen his deportation proceedings on October 4, 2001. In his motion to reopen, Reyes argued that he was denied effective assistance of counsel because Salazar never informed him of the March 2, 2001, hearing. Reyes submitted with his motion a copy of a letter complaining about Salazar, which he allegedly sent to the California State Bar. The letter contains a line stating "cc: Armando G. Salazar," but the letter is neither dated nor notarized, and Reyes has not shown that it actually reached the addressees. The letter discusses Reyes's relationship with Salazar and asserts that Salazar negligently failed to notify Reyes that the hearing had been rescheduled for a later date. Reyes allegedly "kept [Salazar] abreast of [his] new phone numbers ... and [his] new address," but Salazar did not communicate with Reyes in the months preceding the final deportation hearing from which he was absent.

On October 23, 2001, the IJ denied Reyes's motion to reopen on two grounds: first, Reyes failed to furnish a personal affidavit outlining his agreement with Salazar and describing Salazar's alleged misconduct; and second, the IJ found no evidence that Reyes had notified Salazar of his ineffective assistance allegations or that Salazar accepted responsibility for failing to notify Reyes of the final deportation hearing. Citing *Lozada* and related Ninth Circuit decisions, the IJ denied Reyes's motion to reopen. On May 9, 2002, the Board summarily affirmed the IJ's decision, and Reyes filed a timely petition for review.

## II.

We review the Board's ruling on a motion to reopen for an abuse of discretion. *Shaar v. INS*, 141 F.3d 953, 955 (9th Cir.1998). Questions of law are reviewed de novo, *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir.1999), as are claims of due process violations in deportation proceedings, *Castillo–Perez v. INS*, 212 F.3d 518, 523 (9th Cir.2000). Because the Board summarily affirmed the IJ's ruling on Reyes's motion to reopen, we look to the IJ's decision in deciding whether the Board abused its discretion. *Lata v. INS*, 204 F.3d 1241, 1244 (9th Cir.2000).

A.

The Board may rescind the *in absentia* deportation order of Reyes if he demonstrates that he failed to appear due to "exceptional circumstances." *Sharma v. INS,* 89 F.3d 545, 547 (9th Cir.1996). The INA defines exceptional circumstances as "circumstances (such as a serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). Ineffective assistance of counsel qualifies as an exceptional circumstance warranting rescission pursuant to section 1229a(b)(5)(C)(i). *Lo v. Ashcroft,* 341 F.3d 934, 936–37 (9th Cir.2003), *citing In re Rivera–Claros,* 21 I. & N. Dec. 599, 602, 1996 WL 580694 (BIA 1996), *and In re Grijalva–Barrera,* 21 I. & N. Dec. 472, 474, 1996 WL 413571 (BIA 1996).

Although the Sixth Amendment's effective counsel right does not attach to deportation proceedings, *see INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), Reyes enjoys, in deportation proceedings, a Fifth Amendment due process right to effective assistance of the counsel he retained. *Ramirez–Durazo v. INS,* 794 F.2d 491, 499–500 (9th Cir.1986). In the deportation context, "ineffective assistance of counsel ... results in a denial of due process under the Fifth Amendment only when the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case." *Iturribarria v. INS,* 321 F.3d 889, 899 (2003). Reyes generally must also demonstrate prejudice, i.e., that "the performance of counsel was so inadequate that it may have affected the outcome of the proceedings." *Ortiz v. INS,* 179 F.3d 1148, 1153 (9th Cir.1999); *see also Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1226 (9th Cir.2002); *but see Lo,* 341 F.3d at 939 n. 6.

Before the Board will consider an ineffective assistance of counsel claim, however, Reyes first must satisfy *Lozada's* threshold procedural requirements. *Iturribarria,* 321 F.3d at 900, *citing Ontiveros–Lopez v. INS,* 213 F.3d 1121, 1123 (9th Cir.2000). He must provide "(1) an affidavit by the alien setting forth the agreement with counsel regarding the alien's representation; (2) evidence that counsel was informed of the allegations and allowed to respond; and (3) an indication that a complaint has been lodged with the bar, or reasons explaining why not." *Lata,* 204 F.3d at 1246, *citing Lozada,* 19 I. & N. Dec. 637, at 639.

When we apply *Lozada,* our primary concern is to effectuate the purposes underlying its requirements. Three policy goals predominate. First, by forcing petitioners to provide a clear and detailed exposition of their factual allegations, *Lozada* furnishes "a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board." *Lozada,* 19 I. & N. Dec. at 639. Second, *Lozada* enhances the Board's ability to weed out false and frivolous claims. Requiring sworn affidavits and formal grievance letters reduces petitioners' ability to slip meritless claims past the Board, as does the requirement that petitioners notify their former counsel concerning the ineffective assistance allegations. *Id.* Finally, *Lozada* promotes professional responsibility by "highlight[ing] the standards which should be expected of attorneys who represent persons in immigration proceedings." *Id.* at 639–40.

Here, the IJ denied Reyes's motion to reopen because Reyes did not submit a proper affidavit and provided no evidence that he informed Salazar regarding the

ineffective assistance allegations. Reyes concedes that his motion cannot survive a strict construction of the *Lozada* requirements because he did not file the requisite affidavit. Instead, he contends that his putative complaint letter substantially complies with all three *Lozada* criteria: (1) the letter substitutes for a personal affidavit because it describes Reyes's former attorney-client relationship with Salazar and outlines the basic factual allegations upon which his ineffective assistance claim relies, (2) the letter's "cc:" to Salazar provides some evidence that Salazar received notice of Reyes's ineffective assistance allegations, and (3) the letter shows that Reyes filed a proper complaint with the California State Bar. Given the alleged substantial compliance, Reyes argues that the IJ therefore abused his discretion by denying the motion to reopen.

B.

In assessing Reyes's substantial compliance argument, we look to our prior *Lozada* decisions for guidance. Two general principles emerge. First, we have recognized that "the *Lozada* requirements are generally reasonable, and under ordinary circumstances the [Board] does not abuse its discretion when it denies a motion to remand or reopen based on alleged ineffective assistance of counsel where the petitioner fails to meet the requirements of *Lozada*." *Castillo-Perez,* 212 F.3d at 525; *see also Lopez v. INS,* 184 F.3d 1097, 1100 (9th Cir.1999) (declaring that "[t]o establish ineffective assistance of counsel in a motion to reopen, an alien must" meet *Lozada's* criteria). We presume, as a general rule, that the Board does not abuse its discretion when it obligates petitioners to satisfy *Lozada's* literal requirements. 1984 Second, we have recognized that "the *Lozada* requirements are not sacrosanct": "a failure to comply with[the] *Lozada* requirements is not necessarily fatal to a motion to reopen." *Castillo-Perez,* 212 F.3d at 525. Although "the requirements of *Lozada* are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means." *Id.* at 526; *see also Lo,* 341 F.3d at 937; *Rodriguez-Lariz,* 282 F.3d at 1227. For these reasons, we have dispensed with the *Lozada* obligations where counsel's ineffective assistance was obvious and undisputed on the face of the record. *Rodriguez-Lariz,* 282 F.3d at 1227; *Castillo-Perez,* 212 F.3d at 526; *Escobar-Grijalva v. INS,* 206 F.3d 1331, 1335 (9th Cir.2000). In addition, we have concluded that "arbitrary application" of the *Lozada* command is not warranted if petitioner shows "diligent efforts" to comply were unsuccessful due to factors beyond petitioner's control. *Ontiveros-Lopez,* 213 F.3d at 1124–25. Finally, we have excused petitioner's failure to lodge a complaint with the appropriate state disciplinary authorities where petitioner offered a reasonable excuse for this omission and there was no suggestion of collusion between petitioner and the former counsel. *Lo,* 341 F.3d at 938.

Thus, although we have not enforced *Lozada* rigidly, neither have we applied its requirements as loosely as Reyes suggests. In particular, we have never excused a petitioner's failure to provide an affidavit where, as here, the facts underlying the petitioner's claim were not "plain on the face of the administrative record." *Cf. Rojas-Garcia v. Ashcroft,* 339 F.3d 814, 826 (9th Cir.2003) (finding substantial compliance where the central facts underlying the ineffective assistance claim are undisputed in the record); *Melkonian v. Ashcroft,* 320 F.3d 1061, 1072 (9th Cir.2003) (same). This is significant. There are compelling policy reasons to maintain a strong affidavit prerequisite when motions to reopen attempt to raise genuine questions of fact. As we explained in another context:

"[a]n affidavit provides an exact, sworn recitation of facts, collected in one place.... [T]he affidavit requirement serves not only to focus the facts underlying the charge, but to foster an atmosphere of solemnity commensurate with the gravity of the claim." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 327 (9th Cir.1995), *quoting Gibson v. Fed. Trade Comm'n,* 682 F.2d 554, 565 (5th Cir.1982). Affidavits serve a particularly important function in ineffective assistance challenges because they generally supply the primary factual basis upon which the IJ must determine whether a petitioner's ineffective assistance claim warrants a full hearing. Furthermore, since swearing to an affidavit usually means that petitioner will give the same testimony at the hearing, the affidavit requirement provides a firmer basis for the IJ to assess the need for a hearing.

Here, Reyes's cursory factual allegations find little support in the administrative record; on the contrary, Salazar's motion to withdraw directly contradicts the allegations in Reyes's complaint letter. Moreover, Reyes offers no reason why he could not have filed an appropriate affidavit. Under such circumstances, *Lozada's* affidavit requirement is not "arbitrary" because it expands the factual record, discourages petitioners from filing meritless claims, provides an indication of a petitioner's testimony, and enhances the IJ's ability to weed out meritless claims. Had Reyes submitted an affidavit, he might have divulged information under oath that would have undermined or invalidated his ineffective assistance claim. Indeed, Reyes's failure to furnish the requisite affidavit with his current motion may be significant in itself, because the omission could reflect an apprehension that his claim is, in fact, meritless. *Lozada's* purpose to deter meritless claims certainly is not "fully served" by an unsworn complaint letter addressed to another forum. *Lozada's* affidavit requirement may not be the least restrictive method to eliminate meritless claims, but it is not an *arbitrary* one. This is especially true when the underlying claims are controverted and petitioner could have produced a satisfactory affidavit through diligent effort. *Cf. Ontiveros–Lopez,* 213 F.3d at 1124–25.

Under the circumstances, the IJ's application of *Lozada's* affidavit requirement was neither arbitrary nor unduly onerous. Reyes prepared his motion to reopen with the assistance of new counsel, and he has not provided any evidence to suggest that he could not have also filed an appropriate affidavit with reasonable diligence. We conclude, therefore, that the IJ did not abuse his discretion by denying Reyes's motion to reopen based on Reyes's failure to satisfy *Lozada's* important affidavit requirement.

C.

Reyes's petition for review fails for an alternative reason: he has not shown that he provided the required notification to Salazar of the ineffective assistance allegations. Although Reyes's undated complaint letter to the California State Bar concludes with the statement "cc: Armando G. Salazar," this notation indicates at best that Reyes *intended* to send Salazar notice of the state disciplinary proceedings; it is not proof that Reyes actually did. Nor does the undated letter demonstrate that Salazar received an adequate "opportunity to respond" before Reyes filed his motion to reopen. In theory, Reyes could have mailed the complaint letter and filed the motion to reopen simultaneously, thereby affording Salazar no opportunity to furnish a timely response and thus sidestepping *Lozada's* requirement to submit "any subsequent response from counsel" with the motion to reopen. *Lozada,* 19 I. & N. Dec. 637, at 639.

Reyes's failure to meet his burden with respect to these issues is significant. In *Lozada*, the Board explained that the notice requirement provides a mechanism by which the IJ may more accurately assess the merits of a petitioner's ineffective assistance claim. "[T]he potential for abuse is apparent," the Board cautioned, "where no mechanism exists for allowing former counsel, whose integrity or competence is being impugned, to present his version of events if he so chooses, thereby discouraging baseless allegations." *Id.*

Here, Reyes may have put Salazar on notice concerning the substance of his ineffective assistance allegations (i.e., if he actually sent Salazar a copy of the complaint letter), but he offers absolutely no evidence that Salazar enjoyed a timely opportunity to respond. Because Reyes cannot prove he gave Salazar notice of the ineffective assistance allegations or an adequate opportunity to respond, we conclude that Reyes has not substantially satisfied *Lozada*. *Id.*

PETITION DENIED.